PENROD et ux. v. KREBS et ux.

No. 15247.

Court of Civil Appeals of Texas.
Fort Worth.

May 4, 1951.

Rehearing Denied June 1, 1951.

Milburn E. Nutt, of Wichita Falls, for appellants.

George W. Anderson, Jr. and Dawson, Jones, Parish & Fillmore, all of Wichita Falls, for appellees.

HALL, Justice.

Appellees, F. E. Krebs et ux., instituted this suit against appellants, H. L. Penrod et ux., in a district court of Wichita County, Texas, to recover from appellants the sum of $914.93 which appellees claim rightfully belonged to them but was·wrongfully converted by appellant Mrs. H. L. Penrod.

The undisputed facts reveal that appellant Mrs. H. L. Penrod was acting as agent for appellees in selling land belonging to them for the sum of $18,298.50; that the purchaser placed in the hands of appellant Mrs. Penrod, as agent for appellees, the sum of $2,000 as earnest money. When the sale was consummated, Mrs. Penrod retained from the earnest money said sum of $914.93, which she claimed was five per cent commission due her out of the sale price, and gave appellees the balance, $1,-085.07. It is not contended by appellants that appellees, at that time, agreed for appellants to retain said sum of money as commissions.

Appellees further invoked the provisions of section 22, Article 6573a, Vernon's R.C.S. which requires an agreement to pay commissions for the sale of real estate to be in writing and signed by the parties to be charged therewith. It is undisputed that appellants had no written contract with appellees for a stipulated amount of commissions to be paid them in the event a sale was perfected.

The case was tried to the court which rendered judgment in favor of appellees and against appellants for said sum of $914.93.

Appellants' point one is, in the main, that since appellants earned a commission under a verbal contract of performance and appellees not having signed a contract in writing they cannot lawfully recover the earned commission from their agent, for the statute, supra, prohibits their action in court.

It has been held by our Supreme Court in the case of Hutchings v. Slemons, 141 Tex. 448, 174 S.W.2d 487, 148 A.L.R. 1320, that Article 6573a, section 22, V.A.C.S., is, in substance and effect, an addition to our statute of frauds, Article 3995, and that the statute of frauds does not render void or illegal a promise or contract within its terms but same merely establishes a rule of evidence.

It was held by the Supreme Court in the case of Buratti & Montandon v. Tennant, 147 Tex. 536, 218 S.W.2d 842, 9 A.L.R.2d 742, that an essential element of a contract, such as here, required to be in writing may never be supplied by parol.

We find appellants' claim for a five per cent commission was based upon parol testimony introduced upon the trial and admitted in evidence for the purpose of their perfecting a bill. The trial court found that such oral testimony was inadmissible to establish a cause of ·action against appellees, to which we agree.

Appellants' point two is: "Since a valid verbal contract was performed by the Agent, Mrs. H. L. Penrod, to the same extent as if it had been in writing, the statutes of fraud did not prohibit her earning and retaining a lawful commission for her services as agent, and the trial court erred in decreeing Appellees a recovery of the earned $914.93 commission."

Our ruling above is sufficient answer to appellants' point two and we overrule it.

In appellants' point three they contend that since appellees were to be charged with the real estate agent's com-

mission, it was their fault in not having a contract for commissions in writing with their agent, and therefore the statute of frauds having been invoked against appellees, the trial court erred in permitting recovery for them.

This point is intriguing to us, wherein appellants undertake to invoke provisions of section 22, Article 6573a, V.A.C.S., as against appellees' cause of action herein. If we understand appellants' accusation it is that appellees could not present any action as plead by them under oath for the recovery of the involved commission, because their sworn admission showed they had not signed any agreement as the parties to be charged for the real estate commission involved, as required by said statute.

We do not interpret appellees' cause of action plead against appellants is one for recovery of commissions. It is basically a suit to recover certain money which appellants wrongfully retained from appellees. When such proof was made by appellees, the burden then shifted to appellants to prove they were entitled to retain said money under the existing law, supra. Appellants' own admission is to the effect they had no right to the money involved because they did not have a written contract, as provided by law. The trial court did not err in rendering judgment that appellants pay over said money to appellees which they wrongfully retained.

Appellants in point 4 (alternative) argue they are entitled to retain said sum of money on the following grounds:

"(A) As to the amount of the commission, the parties have agreed and stipulated that $914.93 is the correct amount, if any.

"(B) Although no separate, or additional, contract in writing was signed by either party hereto, aside from the one standard sale contract (Exhibit 1), such one written contract was signed by the Sellers Krebs and the Agent, Mrs. H. L. Penrod, and showed the material elements of the transaction in writing, with exception of agreed agent's commission in event of consummation of contract.

"(C) Such one written Sale contract contained on its face all the terms necessary, when coupled with Stipulation of Counsel as to amount of any earned commission, for the court to find that a complete written contract was made between the parties hereto.

"(D) Agreement to pay the commission in event of a consummated transaction is implied from the written Contract of Sale (Exhibit 1); such agreement being one of the terms of the transaction and binding on the parties, and the court erred in not so decreeing."

Citing Spires v. Mann, Tex.Civ.App., 173 S.W.2d 200, writ refused, appellants argue that the contract of sale, coupled with a certain stipulation filed in the trial court, satisfies the terms of the statute with respect to a written agreement for payment of a commission. One of the provisions of the sales contract reads as follows: " * * * Should the purchaser fail to consummate this contract as specified for any reason, except title defects, Seller shall have the right to retain said cash deposit as liquidated damages for the breach of this contract, and shall pay to Agent therefrom the sum of $500.00 or Seller may enforce specific performance of this contract." A stipulation filed by the parties, appearing in the transcript, reads in part as follows: "It is stipulated and agreed by and between the attorneys of record for the plaintiffs and the defendants, and each of them respectively, herein that the sum of $914.93 is 5 per cent of the total sale price of the involved properties herein, to-wit: $18,298.-50, and that if the defendants, H. L. Penrod, and wife, Mrs. H. L. Penrod were entitled to receive and retain any fee or commission involving the matters in controversy herein, that they were entitled to receive and retain such 5 per cent, to-wit: the sum of $914.93 * * *."

Relying on the decision in Spires v. Mann, supra, appellants argue that the contract provision calling for payment of $500 to the broker in event the sale should not be consummated implies an agreement of appellees to pay a commission if the sale should be consummated, and that, since it was stipulated that if appellants were entitled to any fee it would be the sum

of $914.93, the requirement of a written agreement for payment of the fee is thus met.

The Austin Court of Civil Appeals in Tennant v. Buratti & Montandon, 215 S.W. 2d 201, declared that in its opinion the decision in Spires v. Mann was unsound. It is not necessary for us to determine whether or not the Supreme Court settled this conflict when the Buratti case reached it, 218 S.W.2d 842.

It is obvious that all parties to the present suit rejected any idea that the commission to be paid if the sale should be consummated would be the sum of $500, which is the only amount mentioned in the sales contract. If we follow Spires v. Mann and say that the contract implies an agreement to pay $500 as a commission, we are faced with the contention of all parties that such was not the case, and if we say that the contract implies an agreement to pay some commission in the event of consummation of the sale, we are faced with the fact that the amount to be paid is not settled by the terms of the written contract, and that the claim for a commission becomes unenforceable under the decision of the Supreme Court in the Buratti case.

We attach no importance to the fact that the parties stipulated that if appellants were entitled to receive any fee it would be five per cent, because this stipulation constituted no part of the contract which was made at the time the land was sold. Furthermore, the stipulation, if intended to be one of fact, is at variance with the evidence in the case which shows that the testimony offered was conflicting as to the amount of commission agreed to be paid, see 3A Tex. Jur., p. 496, sec. 396; and if the stipulation was intended to state the legal rights of the parties, it is not binding on the courts.

The Court of Civil Appeals in the Mann case, however, held that judgment of the trial court was supported by the record to the effect that a commission of 50¢ per acre was inadvertently omitted from the contract by mutual mistake, whereas in our case there is no finding of the court that the amount of commission to be paid appellants in the event of a sale was omitted by mutual mistake.

We do not find that the provision in the contract before us which obligated the payment to appellants of $500 from earnest money, in event the purchaser refused to consummate the sale, by his own act, in anywise solves the very disputed problem of how much, if any, appellees were to pay appellants for a commission in the event the sale was consummated. In our opinion such question is one of the essential elements of a contract required to be in writing and may never be supplied by parol, as was held by the Supreme Court in the Buratti case, supra. The court there stated: "A contrary rule would practically set at naught the statute of frauds." [147 Tex. 536, 218 S.W.2d 843.] In this particular case the oral testimony, which the court allowed to be introduced for the purpose of appellants' perfecting their bills of exception, exemplifies the fact that there was no agreement between the parties as to the amount of commission which appellants were to receive when the sale was consummated and evidently that was the reason why it was not entered in the written contract. Mrs. Penrod, the main witness for appellants, after having testified that her commission of five per cent had been agreed upon between purchaser and appellees, further stated:

"Q. Did you at any time agree or state to anyone that you would receive or agree to charge or accept less than five per cent? Of the sale price? A. No, sir. * * *

"Q. Mrs. Penrod, * * * did not you read the contract over yourself before you signed your name to it? A. Yes, sir, I always do.

"Q. You read everything in the contract and you are a—this is your signature on it? A. That's correct.

"Q. * * * how long have you been in the real estate business Mrs. Penrod? A. Since '37.

* * * * * *

"Q. Now isn't that * * * the most important part of your work, is collecting

a commission out of your work? A. That's right, that's the way we make our living.

"Q. * * * aren't you rather careful about seeing that when you sign a contract * * * that your commission is provided for in there * * *? A. Yes, sir, I am pretty careful about it.

* * * * * *

"Q. When was the first time you discovered it didn't have a provision for a commission in it? A. When I read it.

"Q. * * * When did you read it? A. I read it in the office.

"Q. What did you do about it, did you go to see Mr. Krebs or Mrs. Krebs and ask them to sign a new one? A. No, sir.

* * * * * *

"Q. Why didn't you? A. Well because that one was plenty good."

On the other hand, Mr. Krebs testified:

"Q. Of course you were willing to use her services and to get a buyer * * * and you didn't expect to pay her a dime in money did you? A. I said I would pay a divided commission which was $365.97. I did state that.

"Q. You stated that to her then? A. Yes, sir. And to my knowledge she accepted it.

"Q. Well now just tell the court when she accepted it? A. At the time she brought the man up sitting in the car to my place.

"Q. Did she accept it in those words? A. She says 'I will accept it.'"

It is therefore readily seen the necessity for such law as written in section 22, Article 6573a.

■ We therefore find that the provision allowing appellants to receive $500 from the earnest money placed in escrow by the seller only applied to the same and did not imply that appellants were to receive five per cent commissions, as insisted upon by them, if the sale was consummated.

■ Appellants' point five (alternative) is as follows: "In second alternative, pleading and proof were sufficient to show that a stipulation to pay commission for selling land was omitted from Standard Sale Con-

tract (written-Exhibit 1) by mistake so as to permit retaining of commission earned, and the trial court erred in not so holding."

The trial court while entering judgment for appellees impliedly found that appellants did not prove to its satisfaction that they were entitled to reform the contract. We have read the testimony and find it disputed on this question, and therefore overrule this point.

Finding no error, the judgment of the trial court is affirmed.