## JOWELL et al. v. CARNINE.

### No. 2456.

Court of Civil Appeals of Texas. El Paso.

Oct. 23, 1930.

Rehearing Denied Nov. 13, 1930.

See, also, 20 S.W.(2d) 1087.

Gibbs & Lewis, of San Angelo, and Jno. B. Howard, of El Paso, for appellants.

Henry Russell and·Hubbard & Kerr, all of Pecos, for appellee.

PELPHREY, C. J.

This suit was instituted by Charles F. Carnine against George Harris, Spencer Jowell, Meryl Jowell, Holt Jowell, and Spencer Jowell & Sons, a copartnership, composed of Spencer Jowell, Meryl Jowell, and Holt Jowell, doing business under the firm name of Spencer Jowell & Sons, for the title and possession of certain, lands in Loving county, Tex., and for the possession of certain other lands upon which he claimed a lease from Kloh, Morgan & Rumsey.

Carnine alleged that George Harris, purporting to act as agent of appellee, had executed on February 27, 1929, a ten-year lease on that part of the lands owned by him; that on July 2, 1929, appellants, except Harris, had attempted to lease said lands from appellee, and, in pursuance of such attempt, an agreement was entered into between·him and the

Jowells whereby they were to remain on the land until September 1, 1929, and at such time deliver the possession back to appellee; that, notwithstanding such agreement, Spencer Jowell and George Harris entered into a conspiracy to deprive appellee of the title to the land and cast a cloud upon the title thereto; that in pursuance of such conspiracy George Harris executed and delivered to Spencer Jowell a purported deed to the property owned by appellee; that at the time of receiving the deed Spencer Jowell knew that George Harris had no interest in the property attempted to be conveyed

Appellee further alleged that such acts were done with, malice and prayed for damages for being deprived of the use of his land, for damages arising from the clouding of his title, and for exemplary damages.

Spencer Jowell answered setting up his deed from George Harris, who, he alleged, had good right to convey. In support of Harris' right to convey, he further pleaded that Harris, having learned that the land was for sale, went to Denver, Colo., and there proposed to Frank Kistler that the latter should furnish the purchase price, and that he (Harris), furnishing the scheme, would put forth his efforts to purchase the land and to thereafter sell same for a profit, the profits of such enterprise to be divided between them; that it was agreed between Harris and Kistler that Kistler would furnish the purchase price, Harris would purchase the property, care for the same, and thereafter sell it; that the profits should be divided in such manner that the first $10,000 realized from the sale of the lands should go to Kistler and the balance to Harris; and that the legal title to the lands should be taken in the name of Charles F. Carnine, Kistler's attorney; and that, thereupon, the lands became equitably owned by Harris and Kistler.

He ·prayed that Carnine recover nothing; he (Jowell) agreeing to pay the $10,000, and in the alternative he alleged the ownership of the $10,000 interest in Kistler (or in appellee, if sale had been made to him by Kistler), and prayed that the land be partitioned or sold and the proceeds partitioned.

On special issues the jury found in favor of appellee in the sum of $609.75, as damages for the use of the land and in favor of appellants on the issue of exemplary damages.

The court instructed the jury to find for appellee on the issue of title and possession.

From the judgment rendered on the above verdict, Spencer Jowell, Meryl Jowell, and George Harris have appealed.

### Opinion.

Appellants, in their brief, present ten propositions upon which their appeal is predicated.

The first two propositions present the theory that the agreement between Kistler and Harris, together with the facts surrounding the purchase by Kistler, raised a question of fact as to whether or not by such agreement Harris became the owner of an interest in the land.

In response to these propositions appellee contends that the testimony taken in its most favorable light shows only an interest in the profits in Harris, and that the court correctly charged the jury to find for him in the issue of title and possession.

■ The question whether the party in whose name property is taken in a joint adventure is the exclusive owner thereof, or whether his associates own an interest in it, depends on the agreement between them. 15 R. C. L. p. 504. Consequently we must look to the agreement between Kistler and Harris to ascertain whether Harris had an interest in the land or only in the profits.

■ In passing upon the question as to the correctness of the court's action in instructing a verdict, we must see if there be testimony, viewed in its most favorable light, which would show that Harris was to have an interest in the land. The testimony upon which appellants must depend to show what the agreement was is that of appellant Harris, and his testimony as to the agreement is as follows: "I have known Frank E. Kistler for twenty-seven or eight years. * * * I went up to see Mr. Frank E. Kistler about the month of August, 1924. I went to see him at Denver, Colorado. I found Mr. Kistler there in his office. My object in going up there was to get him to help me on that land. As to what I said to Mr. Kistler about that when I went to see him: 'I said that this country was in bad shape; that I couldn't get any assistance of any kind and was going to lose out the first of September if I couldn't get some help to get straightened out.' * * * I made a proposition to him for him to help me; he asked me how much it would take to salvage it, and I told him seventy-eight, or eighty-five hundred dollars, and he pitched me a scratch pad and says, 'you go in here and figure out what money that will take, and don't say it will take so much now and so much later, all I want to know is how much I will be out on it, and then you let me know.' I figured it and it was three hundred dollars more than I thought it would be, and I told him it would take about eight-five hundred dollars ($8,500.00). He says, 'You come to my rescue one time, and I will just be glad to help you on that thing,' and he says, 'now where do you come in on this, I have put up the money now where do you come in on it,' and I told him I could get the money back out of this, and we would divide the profit, and then he asked me what I

thought it was worth, and I told him it should be worth Twenty Thousand Dollars at least when the country got on its feet, and he says, 'well, I will go you one better than that, if you go ahead and handle that out, all over ten thousand dollars you get for that you can have.' He says, 'you pay me Ten Thousand Dollars for the money I am out, and you can have it.' * * * As to what was said at that time, or right after that time with relation to who the deed was to be made to; well, I told him there was some judgments here on record against him, and I also had some against me, and he said he was going to put it in his attorney's name, and told me to go into another office and give somebody the description of the deed, which I did, or rather the description of the land to be put in the deed, and I did, and he brought me a letter giving me six months or a year, I forget which, to dispose of this land for Ten Thousand Dollars, giving me all over Ten Thousand Dollars I got for it, and he said at that time that I could have that. * * * "

From the above testimony it appears, we think, conclusively, that the only interest Harris was to have was in the profits derived from a sale of the property, and then only if the sale price exceeded $10,000.

From the conversation as related, Kistler said, "I have put up the money, now where do you come in on it?" This shows that Kistler did not, at that time, recognize any interest in Harris in the land itself. In reply to this question, Harris said: "I told him I could get the money back out of this, and we would divide the profit" and then Kistler, after having been told by Harris that the property should be worth $20,000, said: "Well, I will go you one better than that; if you go ahead and handle that out, all over ten thousand dollars you get for that, you can have."

We are of the opinion that this conversation, together with the fact that Kistler had Carnine give to Harris a letter authorizing him to sell the land within six months or a year thereafter, and retain all over $10,000 he received for it, shows that the only interest Harris had in the transaction was in the profits which might be derived from a sale of the land, and the fact that Harris did not pay over to Carnine or Kistler the lease money collected by him did not change the interest of the parties.

Nor do we think that Harris' conclusion that he owned a half interest in the property, or that there was a partnership existing between him and Kistler in the land, make an issue of fact as to his interest therein.

As quoted by this court in the case of Martin v. Morrison, 260 S. W. 893, 894: "The rule is well settled, however, that where one party to a joint adventure advances money for the purchase of property, and the other par-

ties are to perform services and have a share of the profits arising upon the sale of the property, the title thereto is in the party advancing the money, and the interest of the other parties is in the profits alone. Smith v. Watson, 2 B. & C. 401, 9 E. C. L. 122; Scudder v. Budd, 52 N. J. Eq. 320, 26 A. 904; Moore v. Huntington, 7 Hun (N. Y.) 425; Ross v. Willett, 76 Hun, 211, 27 N. Y. S. 785." This quotation is from a note appearing in 17 Ann. Cas. 1023.

According to Harris' testimony he was given a letter authorizing him to sell the land and retain all over $10,000, and that the time fixed in which such sale should be made by him was, at the most, one year. He testifies that no sale was made by him within the time specified, and that the time was never extended, therefore, his right to an interest in the profits had terminated long prior to the deed from him to Jowell.

Appellants, in support of their contention that there was an issue of fact made which should have been submitted to the jury, cite us to the case of Pyron v. Brownfield (Tex. Civ. App.) 238 S. W. 725, 726.

We find in the opinion in that case the following statement: "Evidence offered by Pyron tends further to show: That when Pyron approached Brownfield he suggested, either that Brownfield lend him the money or go in with him on the purchase. That Brownfield expressed a preference to 'go in on the purchase,' and requested Pyron to 'go ahead and see what could be done.' That after some further negotiations with the owner of the land, in which some reduction in the price of the land as first made was secured, 'they' agreed to take the land, and it was understood, verbally, that 'Brownfield, Harkrider, and Pyron were buying the land together, and that Brownfied should take the deed in his name, as Pyron and Harkrider were getting only a quarter each and Brownfield one-half of the land.'"

Under this statement of the evidence the court held that an issue of fact was made, but we have no such facts before us here, and therefore that case can have no application. We have concluded, after a full examination of the evidence introduced by appellants, that the only interest ever owned by Harris in the joint adventure was in the profits and that his deed to Jowell conveyed no interest in the land in question.

If we are correct in this conclusion, then the court properly instructed the jury to find for appellee on the question of title and possession, and the judgment should be affirmed.

Appellants present other assignments of error, but, in view of the above conclusion, they do not call for discussion.

The judgment of the trial court is affirmed.