## SLAUGHTER v. ROARK.

### No. 4832.

Court of Civil Appeals of Texas. El Paso.
Nov. 7, 1951.

Rehearing Denied Nov. 28, 1951.

Jackson, Blanks & Logan, San Angelo, for appellant.

J. C. Epperson, Alpine, Brian Montague, Del Rio, for appellee.

McGILL, Justice.

Appellee as plaintiff filed this suit in the 83rd Judicial District Court of Brewster County against appellant as defendant. The plaintiff's cause of action is based upon two counts, the first being in the form of a statutory action in trespass to try title to Surveys 47 and 49, Block 336, Texas Central Railway Co., lands in Brewster County; the second being in the nature of a suit for specific performance of a contract of sale between Lawrence Latta, the former owner of said land, and plaintiff, whereby Latta contracted to sell the land to plaintiff. Trial was to a jury, but at the conclusion of the evidence, on motion of plaintiff the court peremptorily instructed the jury to return a verdict in favor of plaintiff against defendant for the title to and possession of the land, and for damages on the basis of 35¢ per acre per year for said lands. This was done and judgment rendered accordingly.

Plaintiff's claim to title is based solely on a contract between him and Latta, dated June 2, 1941, as modified or extended by a lease agreement by Latta as lessor and him as lessee, dated October 28, 1942, and a receipt given to him by Latta in connection therewith on October 28, 1942.

The contract is a vendor-purchaser contract by which plaintiff as purchaser agreed to take from Latta as vendor the two Surveys in question and paid him $50.00 in cash on the execution of such contract. The vendor agreed that contemporaneous with the payment of the balance of the purchase price he would deliver to purchaser a good and sufficient deed executed by himself and wife conveying the property with covenant of general warranty. The purchase price was fixed at $2.00 per acre on a patented basis, the $50.00 to be deducted from the purchase price. Within a reasonable time the vendor agreed to deliver to purchaser an abstract of title and that the purchaser should have a reasonable time thereafter to have such abstract examined. If such abstract did not show a record marketable title to said property in the vendor, the purchaser was to have a reasonable time in which to state his objections thereto in writing, and any defect not so stated should be waived. If the abstract should not show such record marketable title or title good as against said objections which were valid, or the title should not be acceptable to purchaser, the contract should thereupon become void and not be enforceable, and the cash payment should remain the property of the vendor. The vendor obligated himself to cure any written objections to such title as were valid and might be cured.

The lease agreement and receipt dated October 28th, 1942, omitting acknowledgments, are as follows:

"The State of Texas
County of Brewster

"This lease contract made and entered into this the 28th day of October, 1942, by and between Lawrence Latta of Brewster

County, Texas, hereinafter called Lessor, and I. C. Roark, Sr., of Brewster County, Texas, hereinafter called Lessee,

"Witnesseth:

"That the Lessor hereby acknowledges and ratifies and confirms in all things the verbal lease of the hereinafter described premises to Lessee on the 1st day of January, 1942, and acknowledges receipt of the consideration for said verbal lease and the existence thereof to this date, and Lessor does by these presents lease and let unto the said Lessee the same premises, to-wit, all of Surveys numbered Forty-Seven (47) and Forty-Nine (49) in Block 336, Texas Central Railway Company's Surveys in Brewster County, Texas, *for a period of two years from said 1st day of January, 1942, or until my title to said lands has been cleared of the cloud cast thereon by the trespass to try title suit now pending in the District Court of Brewster County, Texas, and Lessee can carry out the contract of sale now subsisting between Lessor and Lessee for the sale and purchase of said lands and obtain a clear title thereto, at and for the consideration of Fifty Dollars and the further consideration of the purchase of said land by Lessee in the event title thereto is perfected by Lessor and the further consideration and conditions and covenants followinng, to-wit:* (Emphasis ours.)

"I.

"That Lessee will faithfully refrain from overstocking said premises and at the expiration of this lease, in the event, title of lessor to said lands has not been rendered marketable and merchantable and deed has not passed from Lessor to Lessee conveying the same, return and deliver the said premises to lessor in as good condition so far as the grass thereon is concerned as when delivered to lessee on January 1, 1942.

"II.

"Lessee shall have the right to sublet the said lands but shall not permit the same to be used for any purpose other than for grazing.

"In testimony whereof, the parties hereto have hereunto set their hands and executed this agreement in duplicate originals on the day and year first hereinabove written.

"(Signed)   Lawrence Latta,
                          Lessor,
"(Signed)   I. C. Roark, Sr.,
                          Lessee."

"Alpine, Texas, October 28, 1942.
"Mr. I. C. Roark, Sr.,
   Alpine, Texas.
"Dear Sir:

"This will acknowledge receipt this day of the sum of Four Hundred ($400.00) Dollars which you have paid to me by reason of the contract of sale between us covering Surveys 47 and 49, Block 336, Texas Central Railway Company's surveys in Brewster County, Texas, and for my one-half undivided interest in the wire fence described in bill of sale this day executed and delivered to you. This amount is being paid and received upon the understanding following, to-wit:

"If I am able to clear the title to the above described surveys of land so that the title to same shall be merchantable and marketable as is provided for in our contract of sale dated June 2, 1941, recorded in Volume 97, page 516, of the Deed Records of Brewster County, Texas, and when the general warranty deed is executed and delivered by me and my wife to you conveying the title thereto, you are to pay me the balance of the consideration for said lands as set forth in said contract of sale after deducting therefrom the sum of Four Hundred Dollars you are paying me today. *If I am unable to perfect my title to said lands so that the title to same is not merchantable and marketable, or I should lose the title to same in the case now pending, the contract of sale shall terminate and neither party shall be obligated further but I am to retain, in that event, the benefit of the aforesaid Four Hundred Dollars and you are to retain the fence this day conveyed to you and the use of the premises for grazing purposes as provided for in the lease this day executed covering the period of time for two years from and after January 1, 1942, or until such time as my title may have been perfected in the meantime.* (Emphasis ours.)

"Lawrence Latta."

It is appellant's contention, as stated in his first point, that the three instruments are not ambiguous and when properly construed show on their face that the contract on which plaintiff's claim to title is based by its terms terminated and became void on or before two years after January 1, 1942, and that the court erred in instructing a verdict and rendering the judgment for planitiff, and in failing to instruct a verdict and render judgment for the defendant. In other words, that the time for performance of the contract was definitely limited to two years from January 1, 1942, and if not performed by that date it became unenforceable. Appellee, on the other hand, contends that by a proper construction of the three instruments, the contract of sale was kept alive by its express terms pending the outcome of the trespass to try title suit referred to in the lease agreement and receipt of October 28, 1942, and since this suit was not terminated by judgment of the District Court of Brewster County until November 1, 1947, the present suit including the count for specific performance, which was filed August 4, 1949, was timely brought within the purview of Article 5531, V. A. C. S.

The facts and attendant circumstances surrounding the execution of the instruments and relevant to their proper construction as shown by the record are: Lawrence Latta and wife, Helen Latta, were the record owners of the property prior to September 11, 1944. By warranty deed of that date which was recorded on December 30, 1944 in the deed records of Brewster County, the Lattas conveyed the two Surveys to Jack Smith, who in turn by warranty deed dated April 12, 1945, recorded April 24, 1945, conveyed the property to appellant Sid Slaughter. The contract dated June 2, 1941 was acknowledged and recorded on that date, the lease agreement dated October 28, 1942, was acknowledged and recorded on October 29, 1942, and the receipt dated October 28, 1942 was acknowledged and recorded on December 22, 1942. On September 2, 1940, F. M. Roark and I. C. Roark, Jr., filed a suit in the District Court of Brewster County, No. 1934 on the docket thereof, in the nature of a suit in trespass to try title, in which among others Lawrence Latta and wife were made parties defendant. On August 4, 1941, the plaintiffs in that suit filed their first amended original petition in which they alleged in paragraph IV thereof that defendants claimed Surveys 47 and 49, Block 336, Texas Central Railway Company, and that such surveys were junior in time and right to plaintiff's surveys and that defendants claim that the last mentioned surveys covered an area in whole and in part covered by the surveys claimed by plaintiffs. Jack Smith, the subsequent grantee of the Lattas, appeared and filed an answer in that suit. On August 27, 1941, plaintiffs in suit No. 1934 filed their second amended original petition with allegations substantially the same as in their first amended original petition. The State of Texas intervened in suit No. 1934 and judgment was not rendered therein by the District Court of Brewster County until November 1, 1947.

Both parties confidently assert that the instruments are in no way ambiguous. We agree that there is no ambiguity as to the time fixed for performance of the contract of sale, the controlling question here. The term of the lease may be ambiguous, that is, whether its duration is for a period of two years from January 1, 1942 subject to the further limitation that it should terminate prior thereto if lessor's title to the leased property should be cleared of the cloud cast thereon by the trespass to try title suit then pending in the District Court of Brewster County and the lessee should be able to carry out the contract of sale in the meantime; or whether the term of the lease ran until the lessor's title to the property should be cleared of the cloud cast thereon by the trespass to try title suit then pending, the lease rental being fixed for the two year period only. It will be noted that there is no consideration provided for the lease apart from the consideration for the sale of the property provided in the contract of sale if the title to the property should be cleared and the sale consummated. Only in the event that the vendor should be unable to perfect his title to the property or should lose title thereto in the pending suit was the $400.00 received

by the lessor to be treated as consideration for the grazing lease for the period of time for two years from and after January 1, 1942. We are not in entire agreement as to the term of the lease fixed by these instruments. We do agree that by them the time for performance of the contract is definitely fixed until the cloud cast on the land by the pending suit should be cleared or until it was determined by that suit that it could not be cleared or that the lessor lost his title thereto. The language of the lease and receipt leaves no room for doubt of this. The lease refers to "the contract of sale now subsisting between lessor and lessee for the sale and purchase of said lands". This reference clearly recognizes that a valid contract for sale and purchase of the land existed between the lessor and lessee at the time the lease was executed. The lease does not fix any time for performance of the contract except as such time may be implied from the statement to effect that when the cloud cast on the lessor's title by the pending trespass to try title suit shall be cleared the lessee can carry out the contract. Nothing is said as to the time fixed for performance should the title not be cleared. However, the language of the receipt, which of course must be construed with the lease, is definite and specific as to the time fixed for performance of the contract in either contingency: If the lessor is able to clear the title to the property so that it shall be merchantable and marketable as provided for in the contract of sale, then when the general warranty deed is executed and delivered by the vendor to purchaser conveying such title, the purchaser is to pay the balance of the consideration due under the contract of sale after deducting therefrom the $400.00 paid to the vendor on the date of the receipt, but "If I am unable to perfect my title to said lands so that the title to same is not merchantable and marketable, or should I lose the title to same *in the case now pending, the contract of sale shall terminate and neither* party shall be obligated further, etc. * * *" This language in no uncertain terms fixes the time when the contract shall terminate in the event the vendor should be unable to perfect his title or

should lose it in the pending suit. When those contingencies should be determined by that suit, since by this specific language the contract of sale should terminate at that time, it follows as a necessary corollary that it should not terminate until that time. We do not see how the time for the performance of the contract could have been more definitely stated. The confusion arises from the language employed in fixing the term of the lease. Appellant's first point is overruled.

Appellant's second point is that the court erred in instructing a verdict and rendering judgment for plaintiff because plaintiff's cause of action for specific performance, if any, was barred by Art. 5531, R.C.S. It is his contention that such cause of action accrued when Latta breached the contract of sale by conveying the land to Smith on September 11, 1944, and hence was barred by the Statute since this suit was not filed until August 4, 1949. We overrule this point. This is a case of anticipatory breach. In such cases the rule as to when the Statute of Limitations begins to run is thus stated in an annotation in 94 A.L.R. p. 456: "The rule as to when the Statute of Limitations begins to run in case of an anticipatory breach of a contract is thus stated in par. 322 of the American Law Institute, Restatement of the Law of Contracts: 'If no action on an anticipatory breach is brought before the time fixed by the contract for the beginning of performance by the party who has committed such a breach, the period of the Statute of Limitations begins to run only from the time so fixed by the contract'." See also Main v. Hopkins, Tex.Civ.App., 229 S.W.2d 820, loc. cit. 823 (no wr. history). Since the time for performance fixed by the contract of sale was the determination of title by suit No. 1934 and judgment was not rendered in that suit until Nov. 1, 1947, the cause of action for specific performance did not accrue until that date and the Statute did not begin to run until that date. The cause of action was therefore not barred under the Statute when this suit was filed on August 4, 1949.

Since we have held that by the express terms of the lease and receipt a specific

time was fixed for performance of the contract of sale and purchase, no issue as to a reasonable time for performance thereof was raised, and the court did not err in failing to submit such issue to the jury. We therefore overrule appellant's third point.

The fourth point is that the court erred in rendering judgment for plaintiff for the reasonable rental value of the land from November 1, 1947. As we have held performance of the contract of sale and purchase was not due until date of the judgment in cause No. 1934, i. e., November 1, 1947. Under any construction of the lease of October 28, 1942, such lease terminated by this date. Appellant as a remote grantee of Latta was the owner of the property and entitled to its possession until appellee demanded specific performance of the sales contract and himself offered to perform. In other words, appellee, in order to show his right to possession had at least to demand specific performance of the contract and himself offer to perform on his part by payment of the balance of the purchase price. He could have elected to sue Latta for damages for breach of contract to sell since Latta had placed it beyond his power to perform by conveying the land to Smith on September 11, 1944. If appellee had so elected appellant would have been entitled to retain possession of the property. The record does not reveal that appellee made any demand of appellant for specific performance of the contract prior to filing his suit on August 4, 1949. Until such demand for specific performance and tender in his pleading to do equity by paying the balance of the purchase price, appellee was not entitled to possession of the property. Therefore, appellant was not chargeable with reasonable rental therefor prior to that time. 41 Tex.Jur. p. 671, Sec. 165; Club Land & Cattle Co. v. Dallas County, Tex. Civ.App., 64 S.W. 872, affirmed on this point though reversed in part on other grounds 95 Tex. 200, 66 S.W. 294, Burns v. Parker, Tex.Civ.App., 137 S.W. 705(3) (no writ history). Appellee relies on Art. 7389, R.C.S. That Statute does not authorize recovery for damages for two years prior to the commencement of suit. It is, in effect, a Statute of Limitations, limiting recovery for damages to this period. Recovery of reasonable rental should be allowed from the date appellee filed this suit, that is, August 4, 1949, instead of from November 1, 1947. That such recovery is warranted during the pendency of the suit is deducible from the judgment rendered in Wooten v. Maierhofer, Tex.Civ.App., 190 S.W.2d 513 (w. r. w. m.). Since plaintiff offered in his pleading to do equity by paying the balance of the purchase price, appellant is not entitled to allowance of interest on the unpaid balance until plaintiff paid same into the registry of the court. He could have avoided loss of interest by performance of the contract as he was obligated to do, Langley v. Norris, 141 Tex. 405, 173 S.W.2d 454, loc. cit. 457(3, 4) 148 A.L.R. 555 and he can not complain because of his failure to do so.

The defendant plead and here relies on title by adverse possession under Art. 5507, R. C. S. We think it unnecessary to labor this point since it clearly appears that appellant failed to show that he held under title or color of title as those terms are defined by Art. 5508, R. C. S. We overrule this point.

If we correctly understand appellant's sixth point it is in substance that the court should not have in effect awarded specific performance of the contract of sale and purchase between plaintiff and Latta against Slaughter, because (a) plaintiff knew at the time the original contract was made he would not accept Latta's title to the land and Latta up to the time he conveyed to Smith was at all times willing to convey to plaintiff such title as he had; and (b) since the contract of sale was executed the lands have greatly increased in value and defendant had made valuable improvements thereon and to allow the remedy of specific performance as against defendant would be harsh, unfair and unreasonable and would unjustly enrich the plaintiff.

We regard (a) above as almost frivolous. We can conceive of no valid reason why appellee's knowledge that he would not accept a defective title should bar him from the remedy of specific performance of a contract which called for

conveyance of a marketable title. As to (b) the record shows beyond issue that defendant purchased the property with at least constructive notice of plaintiff's contractual rights and while litigation which would determine those rights and his own obligations under plaintiff's contract with Latta was pending. He did not prove the value of any improvements made by him, nor that such improvements were made in good faith. It is not contended, nor do we think it could plausibly be, that appellee's conduct and appellant's reliance thereon to his injury was such as would work an estoppel against appellee. In our opinion appellant is in no position to appeal to a court of equity for equitable relief.

The judgment is reformed so as to award plaintiff damages for reasonable rental value of the property at 35¢ per acre per annum from August 4, 1949, instead of from November 1, 1947, and in all other respects it is affirmed.

Reformed and affirmed.